**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────

UBS SECURITIES LLC,

                    Petitioner,          20cv217 (JGK)

      - against -            <u>MEMORANDUM OPINION &</u>
                                                    <u>ORDER</u>

VANESSA PROWSE,

                    Respondent.
─────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The petitioner, UBS Securities LLC ("UBS"), brings a motion for a preliminary injunction and a petition to compel arbitration that would, together, enjoin the respondent, Vanessa Prowse from pursuing her claim for retaliation before the New York State Workers' Compensation Board (the "Board") and compel her to submit that claim to arbitration. In particular, UBS seeks to enjoin Prowse from pursuing her claim for retaliation brought under Section 120 of the New York Workers' Compensation Law before the Board, a claim that is scheduled for trial before the Board on February 4, 2020. On January 10, 2020, this Court entered a temporary restraining order that relieved UBS of the obligation to appear at a pre-merits conference before the Board on January 14, 2020 but that permitted Prowse to appear in order to present this Court's temporary restraining order to the Board. This Court now **grants** UBS's motion for a preliminary injunction, enjoining Prowse from pursuing her Section 120 claim

1

for retaliation before the Board, and **grants** UBS's petition to compel arbitration of the respondent's Section 120 claim.

## I.

The facts of this case are drawn from the declarations and exhibits of the parties.

Prowse was an employee of UBS AG Corporation in Australia from July 13, 2015 until November 5, 2018 at which time she was transferred to a position with UBS Securities LLC as a Fixed Income Sales and Trading Attorney in New York City. Cafarachio Decl., Ex. 1. On October 12, 2018, in connection with her transfer to New York, Prowse signed, by electronic signature, a document titled Employment Arbitration Agreement and Class, Collective and Representative Action Waivers (the "Agreement"). Id., Ex. 2. In pertinent part, the Agreement included a mandatory arbitration provision that covered

> any and all claims or disputes between you and
> UBS . . . including but not limited to all past,
> present or future claims based on, arising out of or
> which arose out of, or in any way relating to your
> prospective or actual employment, hiring, compensation
> benefits or terms and conditions of employment . . .
> including but not limited to contract, tort,
> defamation, breach of fiduciary duty and other common
> law claims, wage and hour claims, statutory
> discrimination, harassment and retaliation claims, and
> any claims arising under or relating to any federal,
> state or local constitution, statute or regulation,
> including, without limitation, [various federal
> employment laws], and any and all other federal,
> state, or local constitutional, statutory, regulatory,

2

or common law claims or causes of action now or
hereafter recognized.

Id. at 1-2. The Agreement explicitly excluded from mandatory

arbitration a certain category of claims, namely

> (i) applications by either party for temporary or
> preliminary injunctive relief in aid of arbitration or
> for the maintenance of the status quo pending
> arbitration; (ii) claims for workers' compensation
> benefits, but not retaliation claims arising out of or
> relating to claims for workers' compensation benefits;
> (iii) claims for unemployment compensation benefits;
> (iv) claims under the National Labor Relations Act, as
> amended, within the exclusive jurisdiction of the
> National Labor Relations Board; and (v) any claim that
> is expressly precluded from arbitration by a federal
> statute. Nothing in this Arbitration Agreement shall
> prohibit you from filing a charge or complaint or
> participating in an investigation resulting from the
> filing of a charge or complaint with the U.S. Equal
> Employment Opportunity Commission ("EEOC"), the
> National Labor Relations Board ("NLRB"), the U.S.
> Department of Labor ("DOL"), the Occupational Safety
> and Health Administration ("OSHA"), or any other
> federal, state, or local administrative agency. You
> also have the right to challenge the validity of the
> terms and conditions of this Arbitration Agreement on
> any grounds that may exist in law and equity, and UBS
> shall not discipline, discharge, or engage in any
> retaliatory actions against you in the event you
> choose to do so or engage in other protected legal
> activity. UBS, however, reserves the right to enforce
> the terms and conditions of this Arbitration Agreement
> in any appropriate forum.

Id. at 2 (emphasis added). The Agreement further specified that,

with respect to Non-Registered Employees, that is employees not

registered under the Financial Industry Regulatory Authority

("FINRA") or registered with a securities license, "any

arbitration of a Covered Claim of a non-registered

3

employee, . . . will be conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules," which is defined in the Agreement as the "JAMS Employment Arbitration Rules and Procedures" and the "JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness." Id. at 3.[1]

On August 6, 2019, UBS terminated Prowse. Cafarachio Decl., Ex. 3. On October 18, 2019, Prowse filed a claim pursuant to Section 120 of the New York Workers' Compensation Law[2] with the Board alleging discriminatory discharge by UBS in retaliation for having previously filed a workers' compensation claim and testifying before the Board. Id.[3] On November 19, 2019, UBS informed Prowse in writing that the Section 120 claim she had asserted before the Board was covered by the Agreement, stating that "[w]hile the Agreement excludes claims for workers' compensation benefits from mandatory arbitration, it explicitly

---

[1] At oral argument, the respondent confirmed that she was a non-registered employee of UBS for purposes of the Agreement.

[2] An employee who prevails on a Section 120 claim is entitled to reinstatement and compensation for any loss arising out of the discrimination as well as costs and attorney's fees. In addition, the employer shall be liable for a penalty between $100 and $500 payable to the state treasury. N.Y. Workers' Comp. Law § 120.

[3] UBS has not petitioned to compel arbitration on the underlying claim for workers' compensation for which the petitioner's termination was allegedly in retaliation. That claim is subject to a hearing before the Board which separate from the February 4, 2020 hearing on the retaliation claim. It appears that the agreement plainly excludes such a claim from arbitration.

notes that 'retaliation claims arising out of or relating to claims for workers' compensation benefits' are not excluded." Cafarachio Decl., Ex. 4. UBS directed Prowse to withdraw her complaint before the Board voluntarily within ten days or else UBS would take judicial action to compel arbitration and seek costs and fees, including attorney's fees, in connection with its forthcoming petition to compel arbitration. Id. Thereafter, Prowse refused to withdraw her complaint, and UBS was ordered to appear before the Board on January 14, 2020 in preparation for a trial on February 4, 2020. Cafarachio Decl. ¶¶ 9-10.

On January 9, 2020, UBS filed a petition to compel arbitration in this Court together with a request for a temporary restraining order and a preliminary injunction. On January 10, 2020, following a hearing, this Court granted UBS a temporary restraining order and set a schedule for submissions and a hearing in connection with the request for a preliminary injunction and the petition to compel arbitration.

## II.

A court considering whether to compel arbitration pursuant to a purported arbitration agreement must decide "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the

arbitration agreement." <u>Hartford Accident & Indemn. Co. v. Swiss Reinsurance Am. Corp.</u>, 246 F.3d 219, 226 (2d Cir. 2001) (internal quotation marks and citation omitted). The question whether parties have contractually bound themselves to arbitrate a particular dispute involves an "interpretation of state law." <u>Specht v. Netscape Commc'ns Corp.</u>, 306 F.3d 17, 26 (2d Cir. 2002) (Sotomayor, J.). Thus, "[w]hen deciding whether the parties agreed to arbitrate a certain matter," courts generally "should apply ordinary state-law principles that govern the formation of contracts." <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995); <u>see also</u> <u>Rightnour v. Tiffany & Co.</u>, 239 F. Supp. 3d 744, 749-50 (S.D.N.Y. 2017). In this case, the only dispute on which the petitioner is seeking to compel arbitration is the Section 120 retaliation claim.

**A.**

The first issue is whether the Agreement is a valid contract that binds both parties. "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." <u>Register.com, Inc. v. Verio, Inc.</u>, 356 F.3d 393, 427 (2d Cir. 2004) (internal quotation marks omitted).

In this case, the respondent received an offer of employment and transfer from Australia to New York contingent

upon her execution of the Agreement. <u>See</u> Carafachio Decl. ¶ 4 &
Ex. 1. On October 12, 2018, the respondent executed and signed
the Agreement and on November 5, 2018, the respondent commenced
her employment for UBS in New York. <u>Id.</u> at ¶¶ 4-5 & Exs. 1-2.
These events clearly demonstrate the existence of an enforceable
contract between the parties. The respondent's continued
employment for the petitioner and the mutual obligation of the
parties to submit covered claims to arbitration establish
sufficient consideration for the Agreement under New York law.
<u>See</u> <u>Marciano v. DCH Auto Grp.</u>, 14 F. Supp. 3d 322, 337 (S.D.N.Y.
2014) (finding consideration because an arbitration agreement
"mutually binds both parties to submit claims exclusively to
arbitration."); <u>Stern v. Espeed, Inc.</u>, No. 06-cv-958, 2006 WL
2741635, at *2 (S.D.N.Y. Sept. 22, 2006) (collecting cases in
which continuation of employment was found to be sufficient
consideration to enforce an arbitration agreement). Further, the
respondent's signature confirms that the Agreement binds the
parties because, in the absence of any fraud or wrongdoing, for
which there is no evidence in this case, "parties are presumed
to know the contents of the agreements they have signed."
<u>Superior Officers Council Health & Welfare Fund v. Empire</u>
<u>HealthChoice Assurance, Inc.</u>, 927 N.Y.S.2d 324, 326 (App. Div.
2011); <u>Thomas v. Pub. Storage, Inc.</u>, 957 F. Supp. 2d 496, 500

(S.D.N.Y. 2013) (finding an enforceable arbitration agreement where the employee signed an acknowledgment of receipt of a handbook containing the arbitration agreement).[4]

The respondent nevertheless argues that the contract was a "take it or leave it" contract that was not open for negotiation, and is unenforceable on those grounds. But the notion of a "take it or leave it" or adhesion contract "may not be invoked to trump the clear language of the agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability." Klos v. Lotnicze, 133 F.3d 164, 169 (2d Cir. 1997); see also Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 122 (2d Cir. 2010) (finding that assertions that the signatory did not read the arbitration agreement or that it was offered on a take it or leave it basis did not render the arbitration agreement procedurally unconscionable). And the respondent does not point to any specific language in the Agreement that is "so grossly unreasonable . . . in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Teah v. Macy's Inc., No. 11-cv-1356, 2011 WL 6838151, at *6 (E.D.N.Y. Dec. 29,

---

[4] Although the parties do not raise any issues concerning the electronic signature, there is no doubt that an electronic signature binds the signatory to a contract just as much as a written signature, under both state and federal law. See generally Naldi v. Grunberg, 908 N.Y.S.2d 639 (App. Div. 2010); Moton v. Maplebear Inc., No. 15-cv-8879, 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016).

2011) (citing <u>Gillman v. Chase Manhattan Bank, N.A.</u>, 534 N.E.2d
824, 828 (N.Y. 1988)); <u>see also</u> <u>Mayagüez S.A. v. Citigroup,</u>
<u>Inc.</u>, No. 16-cv-6788, 2018 WL 1587597, at *12 (S.D.N.Y. Mar. 28,
2018) (discussing procedural and substantive unconscionability).
Moreover, the respondent is not an unsophisticated party, but
rather the respondent is a lawyer, licensed in Australia and
registered in New York. This is not a case in which a "standard-
form contract[ is] offered by large economically powerful
corporations to unrepresented, uneducated, and needy individuals
on a take-it-or-leave-it basis, with no opportunity to change
the contract's terms," and the respondent cannot evade
enforcement of the contract by asserting, in conclusory terms,
simply that the contract was offered on a "take it or leave it"
basis. <u>Klos</u>, 133 F.3d at 168 (internal quotation marks omitted).

Thus, the parties entered into a valid and enforceable
contract and the parties agreed to arbitrate the claims covered
by the arbitration clause in the Agreement.

**B.**

The next question is whether the Section 120 retaliation
claim is covered by the scope of the mandatory arbitration
provision in the Agreement.

"The question whether the parties have submitted a
particular dispute to arbitration, i.e., the 'question of

arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" Schneider v. Kingdom of Thailand, 688 F.3d 68, 71 (2d Cir. 2012) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)). If "there is 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator," then the Court's inquiry ends. PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198-99 (2d Cir. 1996) (quoting First Options of Chi., 514 U.S. at 944).

An arbitration clause that explicitly incorporates rules "that empower an arbitrator to decide issues of arbitrability . . . serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Sol., Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005); see Emilio v. Spring Spectrum L.P., 508 F. App'x 3, 5-6 (2d Cir. 2013) (discussing JAMS arbitrations); Int'l Eng'r & Constr. S.A. v. Baker Hughes, 399 F. Supp. 3d 194, 201 (S.D.N.Y. 2019) (discussing AAA arbitrations); Murray v. UBS Secs., LLC, No. 12-cv-5914, 2014 WL 285093, at *13 (S.D.N.Y. Jan. 27, 2014) (discussing JAMS and FINRA arbitrations).

In this case, the Agreement explicitly states that arbitrations involving non-registered employees, such as the

respondent, will be "conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules," which the Agreement defines as the rules drawn from both the "JAMS Employment Arbitration Rules and Procedures" and the "JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness." Cafarachio Decl. Ex. 2, at 3. In turn, Rule 11(b) of the JAMS Employment Arbitration Rules and Procedures states that "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." Lunetta Jan. 24, 2020 Decl. Ex. 1, Rule 11(b). Similarly, Section C of the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness states parties will have the opportunity to contest the enforceability of a pre-dispute arbitration agreement in a judicial forum, but otherwise, "JAMS will resolve questions of arbitrability under the applicable JAMS Arbitration Rules and Procedures for Employment Disputes." Id. Ex. 2, Sec. C. Thus, the Agreement contains "clear and unmistakable" evidence that the parties intended to delegate questions of arbitrability to the arbitrator. See Murray, 2014 WL 285093, at *13 (discussing the JAMS Employment Arbitration Rules & Procedure); Skyline Steel,

LLC v. PilePro LLC, 33 N.Y.S.3d 201, 202 (App. Div. 2016).
Therefore, under the terms of the Agreement of the parties, the
arbitrator should, in the first instance, determine whether the
Section 120 claim is arbitrable.

In any event, it is clear that the issues in the Section
120 complaint are covered by the Agreement and that the parties
agreed to arbitrate those issues. A Section 120 retaliation
claim is covered by the plain terms of the Agreement's
arbitration clause, which covers "any and all claims or disputes
between you and UBS . . . in any way relating to your . . .
employment . . . or the termination thereof." A Section 120
retaliation claim is covered by that part of the arbitration
clause that covers claims "including but not limited to
contract, tort, defamation, breach of fiduciary duty and other
common law claims, wage and hour claims, statutory
discrimination, harassment and retaliation claims, and any
claims arising under or relating to any federal, state or local
constitution, statute or regulation . . . ." Further, although
the Agreement explicitly excludes from arbitration "claims for
workers' compensation benefits," that phrase is immediately
followed by a phrase explicitly excepting from the exclusion of
claims for workers' compensation benefits "retaliation claims
arising out of or relating to claims for workers' compensation

12

benefits." The plain terms of the parties' arbitration agreement establish that the parties agreed to arbitrate the Section 120 retaliation claim at issue. See Daly v. Citigroup, Inc., 939 F.3d 415, 422 (2d Cir. 2019) (finding that an employee's claims for discrimination and retaliation under various federal statutes were arbitrable under the terms of the arbitration agreement), petition for cert. filed, (U.S. Dec. 19, 2019) (No. 19-788).

Moreover, the clear arbitrability of Section 120 claims is not altered by the provision of the Agreement that states that "[n]othing in this Arbitration Agreement shall prohibit you from filing a charge or complaint with the [EEOC, NLRB, OSHA] or any other federal, state, or local administrative agency." That provision in the Agreement simply tracks a distinction found in the case law between agencies acting as independent prosecutors that may independently bring actions against employers when acting on employees' complaints notwithstanding the existence of a valid arbitration agreement between the employee and the employer, and agencies that, when acting as adjudicators, may not adjudicate claims between employers and employees when a valid arbitration agreement commits those disputes to arbitration. See E.E.O.C. v. Waffle House, 534 U.S. 279, 290-91 (2002) (affirming the ability of the EEOC to prosecute a claim

in court on behalf of an employee notwithstanding an arbitration agreement between the employee and employer); <u>Preston v. Ferrer</u>, 552 U.S. 346, 359 (2008) (enforcing an arbitration agreement that prevented an individual from bringing a claim before a state administrative agency and distinguishing a case where an agency acted "not as adjudicator but as prosecutor, pursuing an enforcement action in its own name or reviewing a discrimination charge to determine whether to initiate judicial proceedings.").

In this case, the respondent seeks to engage the Board in its adjudicative capacity, in order to have the Board determine whether the respondent should prevail against the petitioner on her Section 120 claim. Thus, the provision of the Agreement permitting the respondent to lodge a complaint with a relevant federal, state, or local agency so that the agency may then act as an independent prosecutor is inapposite to the question before the Court in which the petitioner seeks to compel the respondent to arbitrate her claim rather than proceed before the Board when the Board is acting as an adjudicator.

The respondent nevertheless raises two interrelated objections to this clear result. Both are without merit. First, the respondent argues that there was no meeting of the minds about whether Section 120 claims are subject to arbitration. But the respondent's subjective understanding of the terms of the

Agreement is irrelevant. As the respondent herself acknowledges, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent" and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002) (internal quotation marks and citation omitted); see also Brodeur v. City of New York, No. 04-cv-1859, 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) ("[W]here a contract is unambiguous, a party's subjective intent is irrelevant.").

Second, the respondent argues the Agreement is ambiguous as to whether Section 120 claims are covered because the term "benefits" in the Agreement's exclusion is an unclear term. Contrary to the respondent's argument, there is no ambiguity in the Agreement. The Agreement is unambiguous that claims for workers' compensation benefits are excluded from arbitration, while Section 120 retaliation claims arising from an underlying workers' compensation claim are not excluded from arbitration.

**C.**

Finally, the respondent points to a number of cases that she argues counsel against compelling arbitration in this case for "public policy" reasons. None of the cases cited by the respondent controls the outcome of this case or compels a

conclusion other than that the Agreement should be enforced as written to compel arbitration of the Section 120 claim.

First, the respondent argues that there is case law to the effect that Section 120 claims are not proper claims for arbitration. But the cases she cites do not lead to that conclusion. W&G Ltd. v. Workers' Compensation Bd., 500 N.Y.S.2d 472, 474 (Sup. Ct. 1986), held that an arbitrator's determination of a Section 120 claim did not preclude the Board from hearing the issue of discriminatory discharge by analogizing the case to the Supreme Court's decision in Alexander v. Gardner-Denver Co., 415 U.S. 36, 60 (1974), in which the Supreme Court held that an employee was not precluded from pursuing a Title VII claim de novo in a judicial forum even after submitting a contract-based claim to arbitration pursuant to a collective-bargaining agreement. On its face, W&G Ltd. does not help the respondent because it concerned only the preclusive effect of an arbitration decision and not whether a claim was required to be arbitrated. In any event, W&G Ltd. was decided in 1986, before the Supreme Court's decision in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991), in which the Supreme Court held that in the context of a valid arbitration agreement governed by the Federal Arbitration Act, an agreement to arbitrate statutory claims was enforceable

16

absent any indication that Congress intended to preclude disputes under the particular statute from arbitration in toto. Indeed, as the Supreme Court has observed, Gardner-Denver was a narrow decision that held that union-mandated arbitration of a "just cause" termination did not preclude a Title VII action in federal court, and did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. See 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 260-70 (2009).

Another case cited by the petitioner, Ureyvick v. Pepcom Indus., Inc., 547 N.Y.S.2d 109, 110 (App. Div. 1989), suffers from the same infirmity because it over-relies on Gardner-Denver and predates Gilmer. The respondent also cites to Axel v. Duffy-Mott Co., 389 N.E.2d 1075 (N.Y. 1979), but in Axel the New York Court of Appeals simply discussed the standard of review that a court should use when reviewing the Board's determination of a Section 120 claim and did not discuss arbitration at all.

Second, the respondent argues that Section 11 of the Workers' Compensation Law precludes arbitration because it provides that the liability of the employer "prescribed by the last preceding section shall be exclusive and in place of any other liability whatsoever, to such employee . . . ." But the preceding section, Section 10, is the general provision for workers' compensation benefits and not the provision for

17

retaliation under Section 120. Moreover, the Federal Arbitration Act would preempt a provision of the New York Workers' Compensation Law that purported to preclude arbitration. See Preston, 552 U.S. at 359 ("When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative.").

Third, the respondent cites Coleman v. Compass Group USA Inc., 960 N.Y.S.2d 532 (App. Div. 2013), and Section 32 of the New York Workers' Compensation Law for the proposition that arbitration in this case would constitute an impermissible waiver of statutory rights. But UBS does not seek to have the respondent "waive" any rights she has under the Workers' Compensation Law nor does it seek to have the respondent yield a claim through a private agreement. The respondent may proceed on her Section 120 claim in the arbitral forum. Cf. Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) (dismissing concerns that a class action waiver in an arbitration agreement operated as an impermissible prospective waiver of statutory rights because the parties could still pursue their substantive rights in arbitration).

Fourth, the respondent cites cases that she claims support her argument that moving to compel arbitration is itself

retaliatory. But the cases cited are inapposite. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (not discussing arbitration); Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277-79 (11th Cir. 2008) (discussing circumstances in which termination of an employee after that employee's refusal to sign an arbitration agreement could give rise to an inference of discrimination). Moreover, whether there was any retaliation in this case is a matter to be decided on the merits by the arbitrator.

Finally, as explained above, Waffle House, 534 U.S. 279, which held that an arbitration agreement did not foreclose an enforcement action by the EEOC, is not applicable to the facts of this case because the Board does not act as a prosecutor when an employee brings a Section 120 claim, but instead acts as an impartial arbiter. See Preston, 552 U.S. at 359 ("In contrast, in Waffle House . . . the Court addressed the role of an agency, not as adjudicator but as prosecutor, pursuing an enforcement action in its own name or reviewing a discrimination charge to determine whether to initiate judicial proceedings.").

Therefore, the petition to compel arbitration is **granted** and the respondent is required to submit her retaliation claim under Section 120 of the Workers' Compensation Law to arbitration.

A party seeking a preliminary injunction must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Citigroup Glob. Mkts., Inc. v. Special Opportunities Master Fund, 598 F.3d 30, 35 (2d Cir. 2010) (internal quotation marks and citation omitted).

In this case, the petitioner has demonstrated irreparable harm because if the preliminary injunction is not granted, then the petitioner will lose the benefit of its bargain and be forced to proceed before the Board on the respondent's Section 120 claim rather than proceeding in the arbitral forum. Courts have consistently held that "[l]osing the ability to enforce an arbitration agreement is a form of irreparable harm." Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Seneca Family of Agencies, 255 F. Supp. 3d 480, 490 (S.D.N.Y. 2017); Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc., No. 16-cv-5699, 2016 WL 4204066, at *5 (S.D.N.Y. Aug. 4, 2016) (collecting cases).

The petitioner has also demonstrated a likelihood of success on the merits because it is has shown that its dispute

with the respondent should be decided by the arbitrator. <u>See</u>

<u>Seneca Family of Agencies</u>, 255 F. Supp. 3d at 490.

Thus, the motion for a preliminary injunction enjoining the

respondent from pursuing her claim before the Board is **granted.**[5]

### IV.

As the parties acknowledged at the oral argument, because

the Court grants the petition to compel arbitration and the

motion for a preliminary injunction, the respondent's motion for

compensation (Dkt. No. 14) is moot. The motion for compensation

is therefore **denied as moot.**

### CONCLUSION

The Court has considered the arguments of the parties. To

the extent not discussed, they are either moot or without merit.

The petition to compel arbitration is **granted.** The motion for a

preliminary injunction is **granted.** The motion for compensation

is **denied as moot.** The respondent is enjoined from pursuing her

claim before the Workers' Compensation Board and is ordered to

submit her Section 120 claim to arbitration in accordance with

---

[5] The request for a preliminary injunction was initially to enjoin the
respondent from pursuing a claim for employment discrimination or retaliation
in any forum outside of arbitration "during the pendency of this action."
Because the petitioner's petition to compel arbitration has been granted, the
preliminary injunction becomes a final injunction because the respondent is
required to pursue her Section 120 claim in arbitration.

procedures specified in the Agreement. The Clerk is directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
               **January 27, 2020**               ___/s/ John G. Koeltl___
                                                      **John G. Koeltl**
                                            **United States District Judge**